NORTHERN NAT. BANK OF TOLEDO, O., *v.* TRUSTEES OF PORTER TOWNSHIP, DELAWARE CO., O.

*(Circuit Court, N. D. Ohio, W. D.* December, 1880.)

1. MUNICIPAL BONDS—TOWNSHIP—POWER TO ISSUE—LAWS OF OHIO.

A township was authorized to subscribe to the stock of a railroad, provided the county commissioners should not be authorized by a vote of the electors of the county to make such subscription. *Held,* in view of the decisions of the supreme court of the state, that bonds issued by the township in payment of such subscription were void in the hands of a *bona fide* purchaser, where the electors of the county had previously voted to subscribe such stock, and it was the duty of the county commissioners to ascertain and declare the result of such vote.—[ED.

*Stallo & Kittredge* and *Healy & Brannan,* for plaintiff.

*Cooper & Van Deman* and *Matthews, Ramsey & Matthews,* for defendants.

Trial to a jury, before Hon. JOHN BAXTER, circuit judge, and Hon. MARTIN WELKER, district judge.

This was an action upon eight bonds of $1,000 each, and coupons for the annual payment of interest from January 1, 1863, issued by the defendants on May 6, 1853, to the Springfield, Mt. Vernon & Pittsburgh Railroad Company, in payment for a subscription made by the township to the stock of the railroad company. The township had paid the interest up to January, 1863, and then refused or failed to pay any further interest, and the coupons since that time, as well as the bonds, which fell due October 1, 1871, remain unpaid.

These bonds and coupons were indorsed by the railroad company, and sold or pledged, and came through various *bona fide* holders for value to the plaintiff, who was the owner and holder of them at the date of this suit. The chief defence was that the acts of March 21, 1850, February 28, 1846, and March 25, 1851, which authorized subscriptions by counties and townships to the stock of this railroad, provided the township should have authority to subscribe in case the county commissioners should not be authorized by a vote of the electors of the county to make a subscription; and that

the county had voted in favor of a subscription, which had been made before action by the township, and that, therefore, the township had no power to subscribe and issue bonds.

The plaintiff contended that the statutes made a grant of power to the township, but imposed a condition precedent to its exercise, and that as the bonds contained a recital that they were issued in pursuance to the acts of the general assembly of Ohio, and as the township had levied taxes and paid interest for eight years, the defendants were estopped, under the decisions of the supreme court of the United States in numerous similar cases, to set up the non-happening of the precedent contingency as against *bona fide* holders for value.

Secondly, that even if the power did not arise at once upon the passage of the act of March 21, 1850, still, as the county failed to vote at the next annual election, to-wit, October, 1850, as provided for by the act of February 28, 1846, the township thereupon, under the authority of *Shoemaker* v. *Goshen Township*, 14 O. S. 569, 580, became vested with power, and it would be presumed upon the recitals in the bond, in favor of a purchaser for value without notice, that the power had been exercised and the subscription made while the township was thus vested with power, and that the defendants were estopped to set up that the subscription was in fact made after the county had voted in June, 1851, to subscribe to the stock of the railroad company, and had subscribed therefor in August, 1851.

The defendants contended that the township derived no immediate power from the acts of the legislature, and that, if the county commissioners were authorized by a vote of the electors of the county to subscribe, the township never became vested with power to make a subscription, and that the action of the county, being matter of record, was notice to everybody; and, further, that the trustees of the township were not made the tribunal to decide whether the county had acted in the matter. In support of this view the defendants relied on *Hopple* v. *Trustees Brown Township*, 13 O. S. 311; *Beckel* v.

*Union Township,* 15 O. S. 437; and *Hopple* v. *Hipple,* 33 O. S. 117.

The verdict was for the defendant upon the following charge, delivered by Judge BAXTER:

"You will have observed, gentlemen of the jury, from the the evidence and admissions of counsel, that the question in this case has been as many as three times decided adversely to the plaintiff by the supreme court of Ohio. No recovery could be had by the plaintiff upon the facts in this case in any suit which it might prosecute in a state court; therefore the plaintiff has invoked the jurisdiction of the courts of the United States, which are, by the constitution, specially charged with the responsible duty of sustaining and enforcing the obligation of contracts. This is a duty particularly imposed upon the federal courts. From this fact an erroneous impression prevails in the public mind that the law in reference to commercial paper, as administered by the national courts, is different from the law as administered by the state tribunals. This is a mistake. The law is the same as administered by the state and national courts. I do not wish to convey the idea that these legal and constitutional tribunals, expounding the law, do not in some instances make conflicting decisions; but, when such conflict occurs, it arises from a diversity of opinion as to what the law is—from the fact that the law is imperfectly understood and erroneously interpreted by one or the other tribunal. The supreme court of the United States was created and is required by the constitution to construe, sustain, and enforce the obligation of contracts. Hence, in conflicts of decisions on such questions, if there shall be any between the state and national courts, the decision of the national supreme court is paramount and controlling. But there should not be, and I believe there is not, any rivalry, jealousy, or hostility between the two systems of judicial tribunals. Both are solicitous to interpret the laws impartially and correctly. It seems, however, to afford satisfaction to some persons to encourage the belief that there are two governments—national and state—operating in the same territory, and that the courts of the former invite con-

flicts in jurisdiction, and seek opportunities to overrule or disregard the decisions of the latter. This disposition to encourage and provoke jealousy and opposition ought not to be tolerated. If in this case we should feel compelled to dissent from the decisions of the supreme court of the state, and ignore its construction of the statutes in question, we would do so because we entertain a different view of the law, and not because of any want of respect for that leared tribunal.

"The federal courts, by their decisions, have uniformly sustained to the utmost of there authority the sanctity of commercial paper in the hands of *bona fide* holders for value, without notice of defences not appearing upon the face of the paper itself. We concur in these decisions, but think these courts will not go any further in that direction.

"The distinction, if there be any, between this case and the decisions of the supreme court cited and relied upon by plaintiff's counsel, is somewhat shadowy, and lies in the fact that in those cases the power to decide whether precedent conditions, on which authority to issue the bonds depended, had been performed, was confided to the persons authorized to make such issue; whereas in this case the authority to decide this preliminary question was by the statutes vested in the county commissioners, and not in the township trustees who issued the bonds in controversy. It became the duty of the county commissioners to ascertain and declare the result of the vote at the county election held for the purpose of determining whether the county would subscribe stock to said railroad—a fact necessary to be ascertained before the power of the defendant township to subscribe arose. A copy of that abstract, by law made a matter of record, is in evidence. It shows that the county did vote to subscribe stock, and it follows under the statute that the township had no such authority; for the statutes which the plaintiff insists conferred the authority to the township to subscribe, conferred it only on condition that no subscription was made by the county.

"To this extent it differs from the case relied upon by plaintiff's counsel in Kansas. A declaration was made in favor of a subscription, but did not include the returns from one pre-

cinct, which were regularly filed, but not counted, and which,. if counted, would have resulted in a defeat of the proposition to subscribe; and, in that case, the county defending against the bonds sought to prove, and were permitted in the state court to prove, that if the result of the election had been properly declared the proposition to subscribe would have been defeated. That was allowed in the state court, but the supreme court in that respect overruled the state court and declared that the issue of the bonds was in the hands of the parties whose duty it was to declare the result, and the county was precluded by the action of its own agents in determining the fact, which, by the statute, was committed to them to decide. Now, the determination here was by the county commissioners and not by the trustees of the township. It was made by the county authorities, was entered of record, and evidenced by the public records of the county; and to that extent the facts of this case differ from all the cases that have been read. Notwithstanding all this, and notwithstanding the decisions of the supreme court of the state of Ohio, I have —and I believe my associate participates in the same uncertainty—very grave doubt whether the supreme court of the United States may not hold these bonds valid in the hands of *bona fide* purchasers without notice of the facts. We are in questions of this kind not precluded by the construction of state statutes. I believe that it has been well settled that federal courts will, on questions of this kind, construe the statutes for themselves; but the decision of the supreme court of Ohio, repeated so frequently, is an authority, and is entitled to respect at the hands of this court; and we have determined to administer the law as it has been interpreted by the supreme court of the state of Ohio, though the question is a close one and may be said to be a doubtful one. If our judgment was final, if there were no means of reviewing it, we would take further time to investigate thoroughly and fully the authorities relative to and bearing upon the question; but this case is open to a review by the supreme court of the United States, and, I suppose, were the decision to be either way it would finally go to the supreme court of the United

**States.** Seeing that no further injury can be inflicted, except a delay, and that delay would follow, no matter which way we decide, we have concluded to adopt the ruling of the supreme court of the state, and will instruct you that no recovery can be had in this action. Your verdict, therefore, gentlemen, will be for the defendant. It is more a question of law than a question of fact."

WELKER, D. J., concurred.